Donn L. BERIAULT et al., Plaintiffs,

v.

LOCAL 40, SUPER CARGOES & CHECK-
ERS Of the INTERNATIONAL LONG-
SHOREMEN'S & WAREHOUSEMEN'S
UNION, et al., Defendants.

Civ. No. 71-419.

United States District Court,
D. Oregon.

March 24, 1972.

As Amended March 28, 1972.

L. A. Aschenbrenner, Don H. Marma-
duke, Charles J. Merten, Noreen K. Salt-
veit, Marmaduke, Aschenbrenner, Mer-
ten & Saltveit, Sherman B. Kellar, Engel
& Keller, Portland, Or., for plaintiffs.

William F. Lubersky, Richard C.
Hunt, McColloch, Dezendorf, Spears &
Lubersky, and Pozzi, Wilson & Atchison,
Portland, Or., for defendants.

OPINION

BELLONI, Chief Judge:

This is an action by a group of casual
checkers against Local 40, Super Car-
goes & Checkers of the International
Longshoremen's and Warehousemen's

Union and the International Longshoremen's and Warehousemen's Union (hereinafter referred to collectively as ILWU); Pacific Maritime Association (PMA), and the board of trustees of the ILWU–PMA Welfare Plan Fund, the pension plan fund and the vesting benefit trust. Plaintiffs seek a declaration of their rights under a collective bargaining agreement entered into by ILWU and PMA and money damages. Jurisdiction of this court is asserted under 29 U.S.C. Sec. 185 (Section 301 of the National Labor Relations Act), and 28 U.S.C. § 2201 (the Declaratory Judgments Act). By order of this court the issues of pre-emption by the National Labor Relations Board and exhaustion of remedies have been segregated for trial. This opinion deals only with these issues.

The allegations of the plaintiffs are numerous but basically they contend that the ILWU is their exclusive bargaining representative, that on July 1, 1966 the ILWU and the PMA (plaintiffs' employer) entered into a collective bargaining agreement covering the work of all checkers in this area, namely the Class A and Class B checkers and the casuals (of which plaintiffs are representatives). This agreement sets up an order of preference in employment as follows:

1. First preference for employment and dispatch is given to Class A checkers.

2. Second preference is given to limited registered B checkers.

3. Class A longshoremen who are available for work are given third preference.

4. Casual checkers are last in the order of preference. In this group are included temporary casuals, who are dispatched on an equal basis with regular casuals.

All checkers are paid an equal hourly rate. The employer (PMA) contributes certain sums of money to the three defendant funds on the basis of the total earnings of the checkers. Out of these funds the Class A and Class B checkers are eligible to receive benefits. Casual checkers are not entitled to these benefits.

The ILWU and the PMA have operated under this agreement since 1966. Pursuant to this agreement they have adopted different methods of dispatch for the A and B checkers and for the casuals. In addition, plaintiffs contend that the A and B checkers are dispatched to more advantageous jobs where they have an opportunity to earn higher wages than the casuals. The practice of giving A longshoremen job preference over the plaintiffs is a further complaint of the plaintiffs. They contend that the ILWU and the PMA breached the agreement when they gave preference to this class of workers over the plaintiffs and that they dispatch these workers to checking jobs at times when there are longshore work opportunities available.

Although all the plaintiffs' contentions are couched in terms of breach of the collective bargaining agreement by the PMA and the ILWU, and breach of duty of fair representation on the part of ILWU, their basic and underlying complaint is really directed to the terms of that agreement itself. The very acts of the defendants which the plaintiffs denominate as discriminatory and arbitrary are acts authorized by the contract. Plaintiffs admit that complete relief by this court would necessitate a revision of that contract.

Conceivably actions by a union and an employer against an employee can at the same time be a breach of the collective bargaining agreement and an unfair labor practice. It is in this troublesome area that courts have attempted to fashion rules delineating which type of situation is within the exclusive jurisdiction of the National Labor Relations Board and which falls within the jurisdiction of the courts.

Section 301 of the National Labor Relations Act confers on the District Court jurisdiction in "suits for vio-

lation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." Section 7 of the act guarantees to employees certain rights and Section 8 makes it an unfair labor practice for an employer or a union to discriminate against an employee in the exercise of those rights. Activities which are arguably subject to Sections 7 or 8 of the act are within the exclusive jurisdiction of the National Labor Relations Board and courts must defer jurisdiction to that body in the interests of uniformity of policy and congressional intent. San Diego Building Trades Council etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L. Ed.2d 775 (1958), Vaca v. Sipes, 386 U. S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In deciding whether jurisdiction over a certain activity has been pre-empted by the Board, the court must look to the actual conduct sought to be regulated rather than to the label placed upon it by the parties. If the conduct raises important questions of labor policy and federal concern is pervasive then jurisdiction is in the Board. Amalgamated Association of Street, Electric Railway and Motor Coach Employees v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed. 473 (1971).

■ There is no question that the collective bargaining agreement in this case raised important questions of labor policy. The practice of preferring A and B checkers over the casuals is not unique to this area. It appears to be an industry-wide practice. The actions of the defendants do not amount to a breach of the agreement as that term is generally understood. Instead the practices and policies adopted by the defendants are in furtherance of an agreement which was entered into in 1966 and which was and still is in full force and effect. Neither can it be said as to the defendant ILWU that it has committed some act which amounts to a breach of its duty of fair representation. There is no allegation of bad faith, deceitful or dishonest conduct on the part of the un-

ion. Motor Coach Employees v. Lockridge, supra.

A second reason which dictates dismissal of this action for lack of jurisdiction is the fact that plaintiffs herein have not exhausted all administrative remedies available to them. On May 7, 1971, prior to the filing of this lawsuit, the plaintiffs filed a charge against PMA and ILWU asserting violations of Section 8 of the National Labor Relations Act. On May 18, 1971, plaintiffs filed a grievance under the PMA–ILWU contract. Thereafter several of the plaintiffs appeared at a grievance hearing but declined to present evidence stating that their whole complaint was embodied in the written charge. Plaintiffs were invited to return and present additional evidence at a later time but failed to do so. On December 15, 1971, the Regional Director issued his decision refusing to file a complaint on behalf of the plaintiffs. Plaintiffs did not appeal this decision.

■ Although plaintiffs argue that they are not required to exhaust administrative remedies because the actions of the defendants amount to a repudiation of the contract and because any efforts on the part of plaintiffs would be futile, such an argument at this stage is academic since no real effort has been made by plaintiffs to present and prosecute their grievance as provided in the contract. Where a contract provides a comprehensive grievance procedure an employee must attempt to implement such procedure before he can be allowed to bring his action in federal court. Republic Steel v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). I find that the plaintiffs herein have not made a bona fide effort to process this claim through a body of experts specially trained and skilled in the resolution of labor disputes.

Plaintiffs' complaint is dismissed for lack of jurisdiction. This opinion shall constitute findings of fact and conclusions of law pursuant to Rule 52(a) Fed.R.Civ.P.