Donn L. BERIAULT et al.,
Plaintiffs-Appellants,

v.

LOCAL 40, SUPER CARGOES & CHECKERS OF the INTERNATIONAL LONGSHOREMEN'S & WAREHOUSEMEN'S UNION et al., Defendants-Appellees.

No. 72–2118.

United States Court of Appeals,
Ninth Circuit.

July 25, 1974.

---

Sherman Kellar (argued), of Engel & Kellar, Portland, Or., for plaintiffs-appellants.

James H. Clarke (argued), of McColloch, Dezendorf, Spears & Lubersky, Portland, Or., Raymond J. Conboy (argued), of Pozzi, Wilson & Atchison, Portland, Or., for defendants-appellees.

OPINION

Before HAMLEY, WRIGHT and KILKENNY, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This is a a labor dispute in which plaintiffs appeal from the dismissal of their action for declaratory, injunctive and monetary relief against defendants for breach of the union's duty of fair representation and breach of a collective bargaining agreement.[1] Jurisdiction is based on § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and the Declaratory Judgments Act, 28 U.S.C. § 2201. We affirm in part, reverse in part, and remand.

Plaintiffs are "casual checkers" who are non-union members of the employee bargaining unit represented by Local 40, Super Cargoes and Checkers of the International Longshoremen's and Warehousemen's Union (ILWU). They brought suit against the ILWU and the Pacific Maritime Association (PMA) charging, in substance, that (1) they have been discriminated against with respect to their job classification, and have thereby been denied fringe benefits available to union members under the terms of the collective bargaining agreement, and (2) the ILWU and the PMA acted in violation of the collective bargaining agreement in giving union members preference over the plaintiffs in work assignments. Plaintiffs assert that the ILWU has breached its duty of fair representation in the negotiation and enforcement of the collective bargaining agreement.

Following trial on the segregated issues of preemption and exhaustion of remedies, the district court dismissed the complaint for lack of jurisdiction, finding that the matter was within the exclusive jurisdiction of the National Labor Relations Board and, further, that plaintiffs failed to exhaust the grievance procedures provided in their contract.

The Supreme Court has recognized that Congress, by conferring upon the National Labor Relations Board the powers to interpret and enforce the La-

1. The district court's opinion is reported at 340 F.Supp. 155 (D.Or.1972.)

bor Management Relations Act, necessarily implied that potentially conflicting "rules of law, of remedy, and of administration" cannot be permitted to operate. San Diego Building Trades Council v. Garmon, 359 U.S. 236, 242, 79 S.Ct. 773, 778, 3 L.Ed.2d 775 (1959). This recognition forms the basis for the doctrine of preemption in labor relations, which, as a general rule, provides that "neither state nor federal courts have jurisdiction over suits directly involving 'activity [which] is arguably subject to § 7 or § 8 of the Act.'" Vaca v. Sipes, 386 U.S. 171, 179, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), quoting San Diego Building Trades Council v. Garmon, *supra* 359 U.S. at 245, 79 S.Ct. 773.

The preemption doctrine, despite its apparent clarity, has become best described only by reference to its exceptions. *See* Symposium, A Matter of Wooden Logic: Labor Law Preemption and Individual Rights, 51 Texas L.Rev. 1037, 1041 (1973). Included in the list of exceptions that permit courts to adjudicate certain cases is one for all suits brought under § 301 for breach of the collective bargaining agreement [William E. Arnold Co. v. Carpenters, 417 U.S. 12, 94 S.Ct. 2069, 40 L.Ed.2d 620 (May 20, 1974); Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *see* Sovern, Section 301 and the Primary Jurisdiction of the NLRB, 76 Harv.L.Rev. 529 (1963)], and one for at least some suits brought under the duty of fair representation. Vaca v. Sipes, *supra.*

In the present case, the district court found that although plaintiffs' contentions are couched in terms of *breach* of the collective bargaining agreement, "their basic and underlying complaint is really directed to the terms of that agreement itself." 340 F.Supp. at 156. The court appeared to conclude, therefore, that the § 301 exception to preemption was inapplicable and that it lacked jurisdiction over the matter. The court concluded moreover that important questions of labor policy and federal concern pervaded the matters under submission,

further warranting a deferral of jurisdiction to the Board. In addition, the court concluded that the defendant ILWU committed no act constituting a breach of its duty of fair representation. That exception to the preemption doctrine therefore remained inoperative.

We are of the opinion that these conclusions of the district court were erroneous and we remand for further consideration, but we affirm as to the need to exhaust grievance procedures.

## I.

### BREACHES OF THE COLLECTIVE BARGAINING AGREEMENT

Section 301, 29 U.S.C. § 185, confers jurisdiction on district courts in "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . ." In Smith v. Evening News Ass'n, *supra,* the Supreme Court held that the *Garmon* preemption doctrine had no application to § 301 suits. Later, in Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), the Court held that an individual employee could maintain a § 301 action to enforce his rights under a collective bargaining agreement. *See* Amalgamated Ass'n of Street Employees v. Lockridge, 403 U.S. 274, 298, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); Feller, A General Theory of the Collective Bargaining Agreement, 61 Calif.L.Rev. 663, 693–95 (1973).

We disagree with the district court here and conclude that plaintiffs actually claim breaches of the collective bargaining agreement and properly invoke federal court jurisdiction. True, "[i]t is the conduct being regulated, not [plaintiffs'] formal description of governing legal standards, that is the proper focus of concern." Amalgamated Ass'n of Street Employees v. Lockridge, *supra* at 292, 91 S.Ct. at 1920. And true, much of plaintiffs' complaint is clearly beyond the reach of § 301, being concerned not with breaches of the collective bargaining agreement but with the substance of the agreement itself.

Nevertheless, plaintiffs do make two specific allegations of breach of the contract.

■ Plaintiffs allege that the ILWU and the PMA entered into an agreement, supplemental to the contract, providing for dispatch of "A" longshoremen from Locals 4 and 8 to checker jobs in preference to plaintiffs if there was insufficient longshore work to utilize all "A" longshoremen, and that the agreement has been continually breached by dispatching such longshoremen to do checking work even when there was longshoring available. Plaintiffs claim additionally that the ILWU and the PMA have dispatched striking unionists to checker jobs in preference to plaintiffs, thereby violating the anti-discrimination clause (§ 13.1) of the contract.

As to these contentions, therefore, federal jurisdiction exists under § 301, and the district judge erred in applying the preemption doctrine. The judge proffered an alternative, valid rationale for dismissing plaintiffs' action, however, at least as to the breach-of-contract contentions: plaintiffs' failure to exhaust contractual remedies.

Plaintiffs concede that the contract provides a comprehensive grievance and arbitration procedure which they failed to utilize fully. Approximately three weeks before filing their complaint in district court, plaintiffs filed a statement of grievances pursuant to the contract. They failed, however, to present evidence to support them at a hearing before the Joint Port Labor Relations Committee. Plaintiffs were invited to return and present additional evidence at a later time but failed to do so.[2]

They argue that their failure to pursue contractual remedies should not work to their detriment because resort to the grievance procedures would have been futile. The district judge rejected this argument, finding it to be purely "academic" since plaintiffs made no real effort to present and prosecute their grievance as provided in the contract.

■■ As a general rule, employees must attempt to exhaust the grievance and arbitration procedures established by the bargaining agreement before seeking judicial enforcement of their rights. Vaca v. Sipes, *supra* 386 U.S. at 184–185, 87 S.Ct. 903;[3] Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). Under certain circumstances, however, an employee may obtain judicial review of his breach-of-contract claim despite his failure to pursue contractual remedies.

■ The Court noted two such circumstances in Vaca v. Sipes. First, an employee is not limited to contractual remedial procedures when the conduct of the employer amounts to a repudiation of them. "In such a situation (and there may of course be others), the employer is estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action." 386 U.S. at 185, 87 S.Ct. at 914. Secondly, an employee is excused from exhausting his contractual remedies if he was prevented from doing so by the union's wrongful refusal to process the grievance. *Id.*

■ Plaintiffs in the present case have made no showing of the existence of either of these situations. Nor have they proved any other set of facts tend-

2. Prior to filing this action, plaintiffs also filed a charge against the PMA and the ILWU claiming violations of § 8 of the NLRA. The Regional Director issued his decision refusing to file a complaint on behalf of plaintiffs, from which they took no appeal.

3. Since the employee's claim is based upon breach of the collective bargaining agree-

ment, he is bound by terms of that agreement which govern the manner in which contractual rights may be enforced. For this reason, it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement. *Id.* at 184, 87 S.Ct. at 914.

ing to excuse their conceded failure to exhaust the contractual grievance and arbitration procedures. As to the two purely breach-of-contract claims, therefore, the district court correctly dismissed the action.

## II

## DUTY OF FAIR REPRESENTATION

In Steele v. Louisville & N. R. R., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), a case involving the Railway Labor Act, the Supreme Court first announced that a union has the statutory duty to represent fairly all of the members of the employee bargaining unit. Later, in Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), the Court applied the doctrine to a case under the NLRA. This duty is implied from the grant to the union by § 9(a) of the NLRA, 29 U.S.C. § 159(a), of exclusive power to represent all employees in the unit. Vaca v. Sipes, *supra* 386 U.S. at 177, 87 S.Ct. 903. Section 1337, 28 U.S.C. § 1337, confers jurisdiction on federal courts over suits for breach of this duty. Retana v. Apartment Workers, Local 14, 453 F.2d 1018, 1022 (9th Cir. 1972); Waters v. Wisconsin Steel Works, 427 F.2d 476, 490 (7th Cir. 1970), cert. denied, United Order of Am. Bricklayers and Stone Masons Local 21 v. Waters, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970).

Plaintiffs here claim that the ILWU breached its duty of fair representation both when negotiating and when enforcing the collective bargaining agreement. The district court, upon finding "no allegation of bad faith, deceitful or dishonest conduct on the part of the union," concluded that the union did not breach its duty of fair representation. We agree with plaintiffs that the court applied an improper test for determining breach of the union's duty.

Considerable confusion has surrounded judicial attempts to articulate the standards applicable to a union's duty of fair representation. *See* Symposium, The Duty of Fair Representation: A Theoretical Structure, 51 Texas L.Rev. 1119, 1122–38 (1973). Following *Steele,* many courts held that bad faith was a universal requirement of duty of fair representation claims and searched for "hostile discrimination" by the union. *See* Hardcastle v. Western Greyhound Lines, 303 F.2d 182 (9th Cir.), cert. denied, 371 U.S. 920, 83 S.Ct. 288, 9 L.Ed. 2d 229 (1962). One court required "something akin to factual malice." Cunningham v. Erie R.R., 266 F.2d 411, 417 (2d Cir. 1959).

Courts have tended to move away from a rigid bad faith standard, however. In Vaca v. Sipes, *supra,* the Court made repeated references to "arbitrary" union conduct as constituting a breach of the union's duty. The Court stated, for example, that it is incumbent on a union

to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, *and to avoid arbitrary conduct.*

*Id.* 386 U.S. at 177, 87 S.Ct. at 910. [Emphasis added.] The Court stated further that union conduct breaches the duty of fair representation when it is "arbitrary, discriminatory, *or* in bad faith." *Id.* at 190, 87 S.Ct. at 916. [Emphasis added.]

Defendants here contend, however, that *Lockridge, supra,* decided four years after Vaca v. Sipes, "squarely rejected the view" that *Vaca* included mere arbitrary conduct within that conduct constituting a breach of a union's duty. We disagree.

*Lockridge* does inject some ambiguity into this issue. It contains dicta in two places, for example, that seem to require a party seeking to prove a breach of the duty of fair representation to adduce substantial evidence of "fraud, deceitful action or dishonest conduct," 403 U.S. at 299, 91 S.Ct. at 1924, quoting Humphrey v. Moore, *supra* 375 U.S. at 348, 84 S.Ct. 363, or of intentional and severe discrimination. 403 U.S. at 301, 91 S.Ct. 1909. In contrast to this language, how-

ever, *Lockridge* provides elsewhere that "[f]or such a claim to be made out, [a party] must have proved 'arbitrary *or* bad-faith conduct on the part of the Union'" *Id.* at 299, 91 S.Ct. at 1924, quoting Vaca v. Sipes, *supra* 386 U.S. at 193, 87 S.Ct. 903. [Emphasis added.] These two positions appear to us to be in conflict.

It is noteworthy that the *Lockridge* dictum referring to "fraud, deceitful action or dishonest conduct" is taken from the Court's earlier opinion in Humphrey v. Moore, *supra,* which itself contains language indicating that mere arbitrary discrimination by a union may constitute a breach of the duty of fair representation. 375 U.S. at 350, 84 S.Ct. at 372. Indeed, in Vaca v. Sipes, the Court cited Humphrey v. Moore as authority for its statement of a union's duty of fair representation, which included the duty "to avoid arbitrary conduct." 386 U.S. at 177, 87 S.Ct. 903. At the very least, we cannot say that *Lockridge* "squarely rejected" the view that *Vaca* broadened the standard of the duty of fair representation to prohibit arbitrary conduct.

Six months after *Lockridge,* this court expressly considered the standard under which the duty of fair representation is to be judged and concluded that "the Vaca opinion's repeated reference to 'arbitrary' union conduct reflects a calculated broadening of the fair representation standard." Retana v. Apartment, Motel, Hotel and Elevator Operators Union, Local 14, 453 F.2d 1018, 1023 n. 8 (9th Cir. 1972). *See* Feller, Vaca v. Sipes: One Year Later, N.Y.U. Twenty-First Annual Conference on Labor 141, 167 (1969). In Retana, we concluded that Vaca rejected such cases as International Longshoremen's and Warehousemen's Union v. Kuntz, 334 F.2d 165, 171 (9th Cir. 1964), where this court held that "a bad faith motive, an

intent to hostilely discriminate" is required, as distinguished from "arbitrary and unreasonable action."

■ At least three other circuits also have examined the duty of fair representation after both Vaca v. Sipes and *Lockridge* and have concluded, as did we, that mere arbitrary conduct by the union in representing those within a particular bargaining unit constitutes a breach of that union's duty. Sanderson v. Ford Motor Co., 483 F.2d 102, 110 (5th Cir. 1973); Woods v. North American Rockwell Corp., 480 F.2d 644, 648 (10th Cir. 1973); Griffin v. UAW, 469 F.2d 181, 183 (4th Cir. 1972).

■ Recognizing that one of the basic reasons for the duty of fair representation is the reconciliation of the necessity for strong unions with the need to protect individual rights of those represented by them, we feel this conclusion is compelled: a bad faith standard alone

> cannot ensure that a union will offer minimal representation to all the employee it serves . . . [and it] . . . allows unions to make unfounded decisions as long as there is no evidence of deliberate wrongdoing.

Symposium, The Duty of Fair Representation: A Theoretical Structure, *supra* at 1132. We conclude, therefore, that the district court applied an improper standard to the duty of fair representation when it found no breach of that duty solely because plaintiffs did not allege "bad faith, deceitful or dishonest conduct on the part of the union."

Having established that plaintiffs properly stated a cause of action for breach of the duty of fair representation,[4] we next consider whether the district court had jurisdiction to entertain the action. As we have said, 28 U.S.C. § 1337 confers jurisdiction on federal courts to entertain suits for breach of the duty of fair representa-

---

4. We intimate no opinion, of course, as to whether plaintiffs should succeed on this cause of action. We merely note that it does not appear "beyond doubt that plaintiff[s] can prove no set of facts in support

of [their] claim which would entitle [them] to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see Retana v. Apartment Workers Local 14, *supra,* 453 F.2d at 1022.

tion. Retana v. Apartment Workers, Local 14, *supra* 453 F.2d at 1021. The district court concluded, however, that its jurisdiction was preempted by that of the NLRB because the matter in dispute raises important questions of labor policy and federal concern is pervasive. Again we disagree.

In Vaca v. Sipes, the Supreme Court faced a duty of fair representation claim in the general context of a § 301 suit and concluded that the preemption doctrine was inapplicable to such a claim. The Court offered several reasons for not applying it.

> A primary justification for the pre-emption doctrine—the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose—is not applicable to cases involving alleged breaches of the union's duty of fair representation. The doctrine was judicially developed in *Steele* and its progeny, and suits alleging breach of the duty remained judicially cognizable long after the NLRB was given unfair labor practice jurisdiction over union activities by the L.M.R.A. Moreover when the Board declared in *Miranda Fuel* that a union's breach of its duty of fair representation would henceforth be treated as an unfair labor practice, the Board adopted and applied the doctrine as it had been developed by the federal courts. See 140 N.L.R.B., at 184–186. Finally, . . . fair representation duty suits often require review of the substantive positions taken and policies pursued by a union in its negotiation of a collective bargaining agreement and in its handling of the grievance machinery; as these matters are not normally within the Board's unfair labor practice jurisdic-

tion, it can be doubted whether the Board brings substantially greater expertise to bear on these problems than do the courts, which have been engaged in this type of review since the *Steele* decision.

*Id.* 386 U.S. at 180, 181, 87 S.Ct. at 912.

In addition to these considerations, the Court noted that if the Board were to have exclusive jurisdiction, the unreviewable discretion of the Board's General Counsel to refuse to institute an unfair labor practice complaint might result in some cases going unheard. *Id.* at 182, 87 S.Ct. 903. A final but important reason for allowing courts to pass on whether there has been a breach of the duty of fair representation was the fact that the breach would "in many cases be a critical issue in a suit under L.M.R.A. § 301." *Id.* at 183, 87 S.Ct. at 913. The Court suggested that it would make little sense in § 301 cases to require an employee to take his claim against the employer to court and his claim against the union to the Board, when both claims involve an alleged violation of the union's duty of fair representation. *See* Symposium, A Matter of Wooden Logic: Labor Law Preemption and Individual Rights, *supra* at 1063; Morris, The Developing Labor Law, 801 (1971).

Because the last reason applies only to duty of fair representation claims in the context of § 301 suits, there has been some question, at least until *Lockridge*, whether *Vaca* provides relief from preemption of fair representation claims only in that setting.[5] The Supreme Court appeared to answer this question in *Lockridge*, however.

■ Taken at face value, *Lockridge* suggests that all duty of fair representation suits are excused from preemption. *See* Symposium, A Matter of Wooden

---

5. In Tyree v. Edwards, 287 F.Supp. 589 (D. Alaska 1968), aff'd per curiam, 393 U.S. 405, 89 S.Ct. 684, 21 L.Ed.2d 633 (1969), for example, a three-judge district court held that

*Vaca* spoke only to § 301 suits and thus offered only narrow preemption immunity in duty of fair representation cases.

Logic: Labor Law Preemption and Individual Rights, *supra* at 1064; Morris, The Developing Labor Law, 136 (1971 Supp.). The *Lockridge* Court read *Vaca* with approval, as holding that

> an action . . . for . . . breach of a union's duty of fair representation . . . [is not barred by preemption] . . . even if the conduct complained of was arguably protected or prohibited by the National Labor Relations Act *and whether or not the lawsuit was bottomed on a collective agreement.*

403 U.S. at 299, 91 S.Ct. at 1924. [Emphasis added.] This broad statement leads us to conclude that plaintiffs' claims of breach of the ILWU's duty of fair representation are not preempted and that the district court therefore incorrectly dismissed them for lack of jurisdiction.[6]

### III

### CONCLUSION

In conclusion, plaintiffs' claims of breach of the collective bargaining agreement were properly dismissed because plaintiffs failed to pursue the contractual grievance procedures and made no showing adequately explaining that failure. Their claims challenging breach by the ILWU of its duty of fair representation in enforcing the terms of the collective bargaining agreement fall for the same reason.[7]

■ The claims relating to breach of the duty of fair representation in *negotiating* the collective bargaining agreement, however, do state a valid cause of action. The failure to exhaust grievance procedures is of no consequence as to these claims because plaintiffs seek modification of the contract, a remedy not available through the grievance procedure. The case is remanded to the district court with instructions to allow plaintiffs to amend their complaint to allege jurisdiction under 28 U.S.C. § 1337.[8]

Accordingly the judgment of the district court is affirmed in part, reversed in part, and remanded.

---

6. The district court, in applying the preemption doctrine, cited *Lockridge* for the proposition that "[i]f the conduct raises important questions of labor policy and federal concern is pervasive then jurisdiction is in the Board." 340 F.Supp. at 157; *see* Amalgamated Ass'n of Street Employees v. Lockridge, *supra*, 403 U.S. at 296, 91 S.Ct. 1909. The court failed to consider however, that this general rule of preemption applies neither to § 301 suits, in light of *Vaca* and *Lockridge*, to fair representation suits. True, the *Lockridge* Court concluded that the preemption doctrine was applicable in that case. *Lockridge* was not a fair representation suit, however. The issue there was whether a state court had jurisdiction to construe the union security clause in the union-employee contract in order to determine whether Lockridge had been discharged from his employment in violation of that clause. The Court found that it was not a fair representation suit because the case was submitted and tried on the interpretation of the contract, not on a theory of discrimination. *Id.* at 300, 91 S.Ct. 1909. Neither was it a § 301 suit. The Court noted that § 301 suits are limited to interpretation and enforcement of the collective bargaining agreement itself, and do not include, as in that case, disputes relating "to the terms of union-employee contracts that are said to be implied in law." *Id.*

Thus, though the *Lockridge* Court stated that the preemption doctrine is inapplicable both to fair representation suits and to § 301 suits, *Lockridge* fell within neither exception. The Court concluded that the state court lacked jurisdiction because the dispute was arguably subject to the Board's jurisdiction under §§ 7 and 8 of the NLRA and raised issues as to which "federal concern is pervasive and its regulation complex." *Id.* at 296, 91 S.Ct. at 1923. For the view that preemption was improperly invoked even in *Lockridge*, *see* Cox, Labor Law Preemption Revisited, 85 Harv.L.Rev. 1337, 1370–75 (1972).

7. *See* note 3 *supra*.

8. While plaintiffs did not plead jurisdiction under § 1337, which is the basis for a duty of fair representation claim, this appears to be a mere pleading error, and amendment rather than dismissal is the appropriate remedy.