Stephen R. HAVAS, Sue Havas, George Albeck, Stanley Borek, Melvin J. Brink, William H. Cator, Kenneth L. Collins, Donald R. Drake, Elizabeth Emrich, William F. Foote, Edward S. Fulmer, Jr., David P. Gibson, Theodore F. Jamba, J. T. LaBalbo, Lorraine E. Mercier, Clayton E. Mitchell, Paul Muscarnera and Norma W. Paquin, Plaintiffs,

v.

COMMUNICATIONS WORKERS OF AMERICA (C.W.A.), an unincorporated labor organization, C.W.A. District I, C.W.A. Committee on Political Education, Local 1101 of C.W.A., Local 1111 of C.W.A., Local 1123 of C.W.A., Local 1124 of C.W.A., Local 1126 of C.W.A., Local 1127 of C.W.A., Local 1128 of C.W.A., American Federation of Labor-Congress of Industrial Organizations (AFL–CIO), a federation of national and international labor organizations, AFL–CIO New York State Central Body, AFL–CIO Committee on Political Education and New York Telephone Company, a corporation, Defendants.

No. 75–CV–268.

United States District Court, N. D. New York.

July 10, 1978.

National Right To Work Legal Defense Foundation, Inc., Fairfax, Va., for plaintiffs; Hugh L. Reilly, Fairfax, Va., John E. Shaffer, Syracuse, N. Y., of counsel.

Thomas P. McMahon, Buffalo, N. Y., for defendants AFL–CIO, AFL–CIO New York State Central Body and AFL–CIO COPE.

Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N. Y., for defendants C.W.A., C.W.A. District I, C.W.A.–COPE and C.W.A. Locals 1101, 1111, 1123, 1124, 1126, 1127 and 1128; Richard Lipsitz, Buffalo, N. Y., Charles V. Koons, Kane & Koons, Washington, D. C., of counsel.

Michael Hertzberg, New York City, for defendant New York Tel. Co.

### MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

This is an action for declaratory and injunctive relief in which plaintiffs, employees of defendant New York Telephone Company, challenge the use by various defendant labor organizations, of plaintiffs' agency fees for purposes unrelated to collective bargaining or the handling of employee grievances. Jurisdiction is alleged under section 301 of the National Labor Relations Act, 29 U.S.C. § 185, together with 28 U.S.C. §§ 1331, 1337 and 1343.

Presently pending before the Court are several motions, including one for Summary Judgment in favor of defendant American Federation of Labor-Congress of Industrial Organizations (hereinafter AFL/CIO) and

AFL/CIO Committee on Political Education (AFL/CIO C.O.P.E.), as well as some discovery-related motions.[1]

The plaintiffs herein are employees of the New York Telephone Company, and are all employed within New York State. Named as defendants are the New York Telephone Company, a New York corporation; the Communications Workers of America (hereinafter CWA), an interstate labor organization; Locals 1101, 1111, 1123, 1124, 1126, 1127 and 1128 of the CWA; CWA District I, a regional subordinate of the CWA; the AFL/CIO, an affiliation of labor organizations, including the CWA; the New York State Central Body of the AFL/CIO, a subunit of the AFL/CIO operating within the confines of New York State; and the Committees on Political Education (C.O.P.E.) for both the AFL/CIO and the CWA.

### I.

For a number of years, the New York Telephone Company and the CWA have been parties to several successive collective bargaining agreements, the latest of which took effect in July of 1971. Under the terms of that agreement, the plaintiffs and other New York Telephone Company employees similarly situated are required to either be members of the CWA, or to pay an "agency fee," equivalent in monetary terms to union dues paid by regular members of the CWA. The CWA, in turn, is recognized under the agreement as the sole bargaining agent for all New York Telephone Company employees within the plaintiffs' bargaining unit.

In substance, the plaintiffs allege in their Complaint that the CWA commingles all monies received from agency fee payors, such as the plaintiffs, with regular dues received from members of the union. Any

payments or disbursements made by the CWA, whether relating to collective bargaining activities or not,[2] therefore allegedly are made from a single fund from which agency fees are not segregated. Included in such payments are taxes paid to the AFL/CIO, calculated on a per capita basis according to the number of full-fledged members of CWA (thereby excluding payment of taxes for agency fee payors). Neither the AFL/CIO, nor its affiliates AFL/CIO C.O.P.E. and AFL/CIO New York State Central Body directly engages in any collective bargaining activities.

The plaintiffs in this case maintain that portions of their agency fees are being expended for activities unrelated to collective bargaining, some of which activities include agitation, the distribution of propaganda, lobbying, giving political gifts and contributions, and providing of union benefits and activities.[3] Plaintiffs have registered, by letter, several objections to the union's use of their agency fees for non-collective bargaining purposes.

Defendant New York Telephone Company is bound by the terms of the collective bargaining agreement to which it is a party. Included in that agreement is Article 33, relating to establishment of an agency shop. The company stands ready to honor its contractual agreement and require its employees to pay or tender the equivalent of union dues to the CWA.

### II.

#### A. SUMMARY JUDGMENT—AFL/CIO and AFL/CIO C.O.P.E.

Defendants AFL/CIO and AFL/CIO C.O.P.E. have moved for a Summary Judgment in their favor, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Their claim, simply stated, is that plaintiff's

---

1. The New York Telephone Company has also moved for an Order dismissing the Complaint as against it. However, that motion was marked off the motion calendar following several failures of the Telephone Company's attorneys to appear and argue the motion.

2. The CWA adheres to the position that all of its expenditures relate in some way to collec-

tive bargaining. The plaintiffs, of course, disagree. This issue need not be resolved for purposes of deciding this motion.

3. For a more detailed list of union activities challenged by the plaintiffs, see paragraph 16 of their Complaint.

grievance is with the CWA, the union which receives their agency fees, and in turn allegedly indiscriminately expends them. The AFL/CIO and AFL/CIO C.O.P.E. receive no per capita tax from the CWA for its agency fee payors, and as such, they claim, are in no different position than any other of CWA's creditors. Plaintiffs, on the other hand, contend that the CWA is a trustee of all agency fee monies and, because those monies are commingled in an account from which the CWA pays its per capita taxes to the AFL/CIO, the AFL/CIO should be held accountable. This, they claim, is especially true since it is in such a position, vis-a-vis the CWA, that it could prevent such a breach of trust. The plaintiffs also contend that the Fifth Claim for Relief contained within their Complaint sufficiently alleges all of the defendants' participation in a conspiracy under 42 U.S.C. §§ 1985 and 1986, so as to be able to properly withstand a motion for Summary Judgment.

Union security clauses, of which an agency shop agreement is an example, have been consistently upheld as being a legitimate component of collective bargaining agreements, both under section 2 Eleventh of the Railway Labor Act, 45 U.S.C. § 152 (11th), and section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. 158(a)(3). *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), reh. den., 433 U.S. 915, 97 S.Ct. 2989, 53 L.Ed.2d 1102 (1977); *International Association of Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961); *Retail Clerks v. Schermerhorn*, 373 U.S. 746, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963); *Yott v. North American Rockwell Corporation*, 501 F.2d 398 (9th Cir. 1974); *Peltzman v. Central Gulf Lines, Inc.*, 497 F.2d 332 (2d Cir. 1974), cert. den., 423 U.S. 1074, 96 S.Ct. 857, 47 L.Ed.2d

83 (1976), reh. den. 424 U.S. 979, 96 S.Ct. 1487, 47 L.Ed.2d 750 (1976). In fact, national labor policy favors designation of sole collective bargaining agents for members of a particular work group, with a concomitant union security clause to prevent "free riders" from reaping the rewards of collective bargaining efforts by such agents without underwriting their fair share of the agents' expenses. *N.L.R.B. v. General Motors Corp.*, 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963); *N.L.R.B. v. Hershey Foods Corporation*, 513 F.2d 1083 (9th Cir. 1975); *Buckley v. American Fed. of Television and Radio Artists*, 496 F.2d 305 (2d Cir. 1974), cert. den., 419 U.S. 1093, 95 S.Ct. 688, 42 L.Ed.2d 687 (1974), reh. den., 420 U.S. 956, 95 S.Ct. 1342, 43 L.Ed.2d 433 (1974).

The hardships associated with the imposition upon some of a collective bargaining agent empowered to freely negotiate on their behalf, even over their objection, are obvious. Moreover, the dangers inherent in the grant of unfettered power to the collective bargaining agent to saddle the non-member worker with adverse contractual terms and conditions would be, without some manner of control, intolerable. To partially alleviate these hardships, the courts have generally imposed upon collective bargaining agents a duty of fair representation, requiring the agent to act fairly and in good faith toward all workers within the appropriate bargaining unit.[4] *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971), reh. den. 404 U.S. 874, 92 S.Ct. 24, 30 L.Ed.2d 120 (1971); *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Beriault v. Local 40, Super Cargoes & Check. of I.L. & W.U.*, 501 F.2d 258 (9th Cir. 1974).

---

**4.** The duty of fair representation originally evolved from cases of alleged racial discrimination wherein grievances of such nature were oftentimes improperly handled by the collective bargaining agent. *Bazarte v. United Transportation Union*, 429 F.2d 868 (3d Cir. 1970); see, e. g., *Steele v. L. & N.R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). Later court decisions have expanded that duty to a point where it now applies with respect to all aspects of the negotiation, administration, and enforcement of collective bargaining agreements. See, e. g. *Brady v. Trans World Airlines, Inc.*, 401 F.2d 87 (3d Cir. 1968), cert. den., 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969), reh. den. 394 U.S. 955, 89 S.Ct. 1272, 22 L.Ed.2d 492 (1969).

As a further check upon the bargaining agent's authority to be imposed upon the agency fee payor, some courts have interpreted the Railway Labor Act, or read into collective bargaining agreements, the condition that agency fees be used only to defray costs associated with collective bargaining and enforcement of collective bargaining agreements.[5] *International Association of Machinists v. Street, supra; Seay v. McDonnell Douglas Corporation,* 427 F.2d 996 (9th Cir. 1970); *Ellis v. Railway Clerks,* 91 L.R.R.M. 2339 (S.D.Cal.1976). The reasoning behind the imposition of such a condition is obvious—to allow free riding agency shop members to reap the benefits of a collective bargaining agreement without underwriting their share of the costs of obtaining such benefits is as unfair as to compel a non-union employee to subsidize union activities totally unrelated to employment conditions.

The gravamen of plaintiffs' Complaint is that portions of their agency fees are being expended, over their objections, for purposes wholly unrelated to the negotiation and enforcement of collective bargaining agreements. This, they claim, represents a breach by the CWA of its duty of fair representation. In order to justify extending liability to the AFL/CIO and AFL/CIO C.O.P.E., the plaintiffs rely upon both a trust theory, and one alleging their participation in an unlawful conspiracy under 42 U.S.C. § 1985(3).

■ There have been instances in the past when courts have rather loosely referred to the duty of fair representation in terms of being fiduciary in nature, often associating trust terminology with that obligation. See, e. g. *Trailmobile Co. v. Whirls,* 331 U.S. 40, 68, 67 S.Ct. 982, 91 L.Ed. 1328 (1947) (Jackson, J., dissenting) ("trusteeship"); *Thompson v. Brotherhood of Sleeping Car Porters,* 316 F.2d 191 (4th Cir. 1963); see also *Brooks v. N.L.R.B.,* 348

U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954); *Elgin, J. & E.R. Co. v. Burley,* 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946). It is the language contained within those cases, none of which holds that a constructive trust is to be imposed with respect to agency fee monies in the hands of a collective bargaining agent, upon which plaintiffs heavily rely. The cases in which courts have attempted to define the duty of fair representation unanimously belie the fact that the duty of fair representation is so pervasive as to give rise to trust obligations. To categorize the duty of the union toward an agency fee payor as a fiduciary one does not *ipso facto* mean the imposition of trust obligations upon the union with respect to agency fees. The agency fee is simply that—a fee for services rendered, viz: collective bargaining on the agency fee payor's behalf. The relationship between the agency fee payors, plaintiffs herein, and the union, the CWA, is therefore one of debtor and creditor, rather than trustee and beneficiary. *Cap. Powerhouse Eng. v. Washington,* 96 L.R.R.M. 3004 (Wash.S.Ct.1977).

■ The logic of this conclusion is buttressed by several decisions involving previous challenges of non-collective bargaining uses of agency fees by unions. In those cases in which such challenges were successful, the courts were very particular in fashioning or suggesting carefully delimited remedies, including injunction against such unauthorized expenditures of agency fees, and reimbursement of that portion of the agency fees which was unlawfully spent. See, e. g. *Abood v. Detroit Board of Education, supra; Railway Clerks v. Allen,* 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963); *International Association of Machinists v. Street, supra; Marker v. Shultz,* 158 U.S.App.D.C. 224, 485 F.2d 1003 (1973). In none of those opinions was it suggested that a *cestui qui* trust should be imposed

---

5. To what extent this should apply to the case at bar, of course, remains in issue, and need not be resolved at this point. It should be noted that categorizing a union's activities as either collective bargaining *vel non* is more often than not a matter of degree, and can only be accomplished after considering the specific activity and its relationship with the ultimate end of collective bargaining. See *Abood v. Detroit Board of Education, supra,* 431 U.S. at p. 236, fn. 33, 97 S.Ct. 1782.

with respect to agency fees in the hands of the union. The plaintiffs' attempt to place liability upon the AFL/CIO and AFL/CIO C.O.P.E. by virtue of a trust theory therefore cannot succeed.

The plaintiffs have also attempted to hold the AFL/CIO and AFL/CIO C.O.P.E. accountable by alleging a conspiracy, among the various defendant unions and the New York Telephone Company, in violation of 42 U.S.C. §§ 1985(3) and 1986.[6] By virtue of the two statutes' interdependence, a cause of action under 42 U.S.C. § 1986 necessarily will rise or fall with that asserted pursuant to 42 U.S.C. § 1985. *Beck v. Communications Workers*, 95 L.R. R.M. 2785 (D.Md.1977).

This Court believes that the plaintiffs have not, and cannot possibly demonstrate a cause of action under 42 U.S.C. § 1985(3), based upon the facts of this case as alleged in their Complaint. That provision of the law has been consistently held, in both cases involving similar factual situations, and in other unrelated cases, to apply only in cases where the alleged actions taken by the conspirators were provoked by racial or otherwise class-based, invidiously-discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Lohr. v. Association of Catholic Teachers,*

*Local 1776*, 416 F.Supp. 619 (E.D.Pa.1976); see also *Beck v. Communications Workers, supra.* This Court is convinced that, based upon the facts as alleged, the plaintiffs cannot possibly sustain a cause of action under 42 U.S.C. § 1985(3), particularly with respect to defendants AFL/CIO and AFL/CIO C.O.P.E. cf. *Beck v. Communications Workers, supra.* Those two defendants are therefore entitled to a Summary Judgment in their favor upon all claims asserted against them by the plaintiffs.

## B. DISCOVERY MOTIONS

During the three years since this case commenced, the parties have been engaged in a multitude of discovery-related proceedings,[7] all too often finding themselves entangled in disputes requiring them to enlist the aid of the Court.[8] This Court presently has under advisement three motions relating to discovery matters.

### 1. November 14, 1977

The plaintiffs have moved, pursuant to Rule 37 of the Federal Rules of Civil Procedure, for an Order compelling various CWA defendants to answer a set of Interrogatories propounded to them by plaintiffs on or about July 5, 1977. The plaintiffs contend that all of the questions in issue are rele-

---

**6.** § 1985. Conspiracy to interfere with civil rights—Preventing officer from performing duties

Depriving persons of rights or privileges (3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

§ 1986. Same; action for neglect to prevent

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be

liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; . . .

Plaintiffs also make reference in their Complaint (¶¶ 41, 43) to 42 U.S.C. § 1983, though nowhere else does the Complaint mention, or attempt to set forth a cause of action under that section. In any event, unlike cases falling within the Railway Labor Act, agency fee cases coming under the National Labor Relations Act do not involve sufficient state action to support a cause of action under § 1983. *Beck v. Communications Workers, supra.*

**7.** As an example, to date the plaintiffs have served upon the various defendants approximately five sets of Interrogatories, nine Requests to Produce (records and documents), three Requests to Admit, and some twenty-one Notices of Deposition.

**8.** Approximately eight discovery-related motions have been brought on, at one time or another, by the parties to this action.

vant, and therefore properly posed under Rules 26(b) and 33 of the Federal Rules of Civil Procedure. To bolster their contention, plaintiffs cite the fact that on or about September 23, 1977, the CWA defendants served upon the plaintiffs a set of Interrogatories exactly mirroring those propounded by the plaintiffs. The defendants, on the other hand, assert that the questions posed are irrelevant to the issues in the case, and that to require them to be answered would be unduly burdensome.

Considering the discovery that has been heretofore conducted over the three-year history of this case, the Court tends to agree that answering all of the questions in issue would be unduly burdensome and oppressive. The Court will order the defendants to answer questions numbered "1" and "2", stating *by category* those activities engaged in, by the defendants, which they claim do not constitute breaches of their duty of fair representation, and to further set forth which of their employees engage in each *type* of activity. The remaining questions (4, 5, 6, 7, 8, 9, 10, 11, 13, 16, 17, 18, 19 and 20) need not be answered, as they are both irrelevant to the issues at bar and overly burdensome.

2. April 10, 1978

On April 10, 1978, this Court entertained oral argument on cross motions brought by the plaintiffs and two of the CWA defendants. Defendants CWA and CWA District I moved for a protective Order, under Rule 26(c) of the Federal Rules of Civil Procedure, in an attempt to avoid having to comply with plaintiffs' Request to Produce, dated February 21, 1978, in which plaintiffs seek inspection of CWA files relating to 132 specifically enumerated categories, as well as the second Request to Produce to CWA District I, served on or about February 27, 1978. The plaintiffs have cross moved for an Order compelling CWA President Glenn E. Watts to answer deposition questions put forth over the objection of defendant CWA. The questions relate to Mr. Watts' assertion that plaintiffs' agency fee relationship with the CWA is voluntary in nature. Further

questioning, also the subject of the plaintiffs' motion, concerned whether or not Mr. Watts had a dictionary in his office, and what dictionaries he considered to be authoritative. This line of questioning, plaintiffs assert, was designed to test the validity of the CWA's contention that all of its activities relate, in some way, to collective bargaining.

Despite plaintiffs' assertions to the contrary, the plaintiff's demands made in the requests to produce served upon the CWA have all of the earmarks of a fishing expedition. Granted, it could be said that the files sought most likely contain some material relevant to this case, and that their review would be helpful to plaintiffs in order to support their attack upon the validity of the CWA allegation that all of its activities relate to collective bargaining. Yet the same can be said for every record ever maintained by the CWA. This Court believes that a balancing of the interests of both parties leads irresistably to the conclusion that the need for the discovery sought is far outweighed by the burden which compliance would place upon the defendant CWA. The Court will therefore order that the CWA be protected from the discovery sought in the February 21, 1978 Request to Produce.

Insofar as the second Request to Produce to CWA District I is concerned, this Court concurs in the defendants' assertion that the material sought relates primarily to negotiation of the agency fee collective bargaining agreement, an issue not relevant to the claims now before the Court. As such, the CWA District I is likewise entitled to protection from the discovery sought.

The Court holds that such discovery of CWA and CWA District I files may be had only upon a showing to this Court, by plaintiffs, that the need for material in any particular file outweighs the annoyance, embarrassment, oppression, or undue burden which compliance would cause to the CWA.

The plaintiffs' motion to compel Mr. Watts to answer the deposition questions presently in issue is denied, with one excep-

tion. The plaintiffs may inquire into the basis for Mr. Watts' contention that the agency fee payors' relationship with the CWA is a voluntary one. However, the questions relating to dictionary definition are not wholly relevant to the issues of this case. The dictionary definition of collective bargaining may not control, or even be relevant, in this case. Moreover, it is unlikely such a definition will even bear upon what activities fall within or outside of the general categories of collective bargaining and the handling of grievances, and therefore are or are not therefore properly chargeable to the plaintiffs under such cases as *Seay v. McDonnell Douglas Corporation.* The deponent therefore need not answer those questions. He may, however, be asked how he would define the term, and how each of CWA's activities fits within that definition.

### ORDER

The Clerk shall enter Judgment in favor of defendants AFL/CIO and AFL/CIO C.O. P.E. The CWA defendants are ordered to answer, to the extent indicated above, questions numbered "1" and "2" of the plaintiffs' Interrogatories served on or about July 5, 1977. The defendants need not answer questions numbered "4", "5", "6", "7", "8", "9", "10", "11", "13", "16", "17", "18", "19" and "20." The CWA need not comply with plaintiffs' Request to Produce, dated February 21, 1978, which request relates to CWA's files. CWA District I likewise need not comply with the second Request to Produce, served on or about February 27, 1978. Deponent Glenn Watts is ordered to answer questions relative to his assertion that the plaintiffs' relationship with the CWA is voluntary. He need not, however, answer questions relating to the dictionary definition of collective bargaining, and how it relates to various CWA activities.

It is so ordered.