**Imogean SOSBE, Plaintiff-Appellant,**

v.

**DELCO ELECTRONICS DIVISION OF GENERAL MOTORS CORP., et al., Defendant-Appellee.**

**No. 87–1002.**

United States Court of Appeals, Seventh Circuit.

Submitted June 22, 1987.[*]

Decided Sept. 15, 1987.

* Shortly before oral argument was scheduled in this case, the parties notified us of ongoing settlement negotiations. In light of these negotiations, the court entered an order vacating the oral arguments set for June 4, 1987. Pending notification from the parties regarding the result of negotiations, the panel assigned to hear the arguments on June 4, 1987, took the matter under advisement. On June 22, 1987, counsel for the plaintiff-appellant submitted a report notifying us that the parties are unable to resolve this case. Accordingly, the case was deemed to be submitted for resolution.

Daniel J. Harrigan, Bayliff, Harrigan, Cord & Maugans, Kokomo, Ind., for plaintiff-appellant.

Barry A. Macey, Segal & Macey, Indianapolis, Ind., Herbert C. Snyder, Jr., Barnes & Thornburg, Ft. Wayne, Ind., for defendant-appellee.

Before FLAUM, MANION, Circuit Judges, and GORDON, District Judge.[**]

MYRON L. GORDON, District Judge.

Under section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185, an employee may bring an action charging an employer with violating its collective bargaining agreement and charging a union with violating its duty of fair representation by mishandling the resulting grievance. *See Vaca v. Sipes*, 386 U.S. 171, 186–87, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight*, 424 U.S. 554, 567, 96 S.Ct. 1048, 1057–58, 47 L.Ed.2d 231 (1976). The plaintiff-appellant in this case, Imogean Sosbe, filed just such a hybrid § 301/fair representation complaint against her employer, Delco Electronics Division of the General Motors Corporation (GM) and against her union, Local 292 of the United Automobile Workers, and International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, UAW (union). Ms. Sosbe alleged that GM violated its collective bargaining agreement by refusing to reinstate the seniority to which she claims entitlement. With respect to the union, Ms. Sosbe alleged that its refusal to undertake grievance proceedings against GM challenging the company's decision constituted a violation of its duty of fair representation.

---

[**] Honorable Myron L. Gordon, Senior District Judge of the Eastern District of Wisconsin, is sitting by designation.

The district court entered judgment in favor of both GM and the union after considering their applications for summary judgment. The district court based its decision on three alternative grounds: First, the court concluded that summary judgment in favor of the defendants was warranted because Ms. Sosbe failed to exhaust her internal union remedies; second, the court held that Ms. Sosbe's claim was time barred; third, the district court found that Ms. Sosbe had failed to allege sufficient facts to establish the union's violation of its duty of fair representation.

We agree that the plaintiff-appellant is not excused from exhausting her union remedies and that she failed timely to commence her claim. These important procedural deficiencies render it unnecessary to address the district court's third alternative ground for dismissal. Accordingly, we affirm the district court's judgment.

## BACKGROUND

Imogean Sosbe was employed by GM from 1964 until 1972. For health reasons in 1972, Ms. Sosbe quit her job. At the time Ms. Sosbe quit, as well as at all other times relevant to this case, there existed between the union and GM a collective bargaining agreement (agreement). Among other things, the agreement sets forth a four-step internal grievance procedure, *see* agreement at ¶¶ 28–55, and the ways in which seniority is broken and sacrificed, *see* ¶ 64. Pursuant to the latter provision, upon her resignation in 1972, Ms. Sosbe sacrificed her accumulated seniority.

Ms. Sosbe was rehired by GM in 1981, but her prior work history with the company was not recognized for seniority purposes. Ms. Sosbe's consequent reduced seniority status rendered her vulnerable to lay-offs and work cutbacks at GM's Delco plant. In order to improve her job security, Ms. Sosbe applied to GM for reinstatement of the seniority that she had accumulated during her employment with the company from 1964 until 1972. On May 26, 1982, GM granted her application.

In November 1983, however, the union protested GM's unilateral grant of seniority to Imogean Sosbe. Such a grant to Ms. Sosbe rendered her eligible for job recall ahead of many other employees and union members. As a result, the union received many complaints regarding Ms. Sosbe's reinstatement. Subsequently, the union requested that GM rescind its decision on seniority for Ms. Sosbe; GM acquiesced in this request. In a conversation on November 16, 1983, the then local bargaining chairman, Al Curella, informed Ms. Sosbe that the union would not represent her against GM and that the union did not support her quest for seniority.

Ms. Sosbe did not invoke the union's internal grievance procedures to challenge Mr. Curella's position. Instead, she engaged an attorney who corresponded with Mr. Curella regarding the situation. However, Mr. Curella did not budge from his position with regard to Ms. Sosbe's seniority.

In June 1984, Norm Accord replaced Al Curella as the bargaining chairman of Local 292. Ms. Sosbe spoke with Mr. Accord about her seniority problem; he was more sympathetic than his predecessor. Subsequent to this discussion, Mr. Accord filed a grievance on behalf of Ms. Sosbe but withdrew it on August 30, 1984, after further investigation of the effect on other union members. Ms. Sosbe again failed to invoke the union's internal procedures. Instead she wrote letters and made phone calls to various international union officers and GM personnel. Ms. Sosbe commenced the instant case by filing a complaint in the southern district of Indiana on November 15, 1984.

## ANALYSIS

In reviewing the district court's grant of summary judgment in favor of GM and the union, all reasonable inferences must be drawn in a light most favorable to the nonmoving party. *Colan v. Cutler-Hammer, Inc.,* 812 F.2d 357, 360 (7th Cir. 1987). *See also Bartman v. Allis Chalmers,* 799 F.2d 311, 312–13 (7th Cir.1986). Reviewing the district court's decision even within these liberal parameters, we are per-

suaded that Ms. Sosbe is procedurally barred from pursuing her claims in the courts.

### Failure to Exhaust Internal Union Remedies

■ It is not disputed that Ms. Sosbe failed to invoke the union's internal grievance procedures prior to filing her hybrid § 301/fair representation complaint in the district court. She contends that pursuit of a grievance would have been a futile exercise. In Ms. Sosbe's view, the fact that the union advocated GM's revocation of her reinstated seniority suggests that the union is impossibly hostile to her. We are not persuaded that Ms. Sosbe has established sufficient hostility on the part of union officials to excuse her from resort to her union's internal grievance system.

As a general rule, an employee may not commence a hybrid § 301/fair representation lawsuit without first exhausting the internal union processes to attempt to resolve the fair representation dispute. *See Clayton v. UAW*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). A court may, in its discretion, however, excuse an employee's failure to exhaust. In *Clayton* the Supreme Court set forth three factors to aid in the exercise of this discretion:

> [F]irst, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether the exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Clayton, supra,* 451 U.S. at 689, 101 S.Ct. at 2095. *See also Richards v. Local 134,* 790 F.2d 633, 637 (7th Cir.1986).

If any of these three conditions are found to exist, a court may excuse an employee-plaintiff from the duty to exhaust. "Moreover, discretion whether to require exhaustion is not limited to a consideration of three factors.... In fact, in considering

whether exhaustion was required, a court must look to the reasonableness of imposing it under the circumstances of the situation." *Lewis v. Local Union No. 100,* 750 F.2d 1368, 1380 (7th Cir.1984).

Ms. Sosbe proffers only a single excuse for her failure to exhaust: that her local encouraged GM to reverse its decision on her seniority renders utilization of the internal appeals procedures futile. However, the union's internal appeals process consists of four steps. Only the first and second steps are handled by the local union officials. Step three provides that an employee's disagreement with the local be submitted to the regional director of the international. *See* agreement at ¶ 38. If the employee is dissatisfied with the international's disposition, the grievance may be appealed to an impartial umpire. *See* agreement at ¶ 43. Thus, proceeding according to steps 3 and 4 of the union's established grievance procedures, Ms. Sosbe's claim would have been completely separate from the individuals at Local 292, the only individuals whom Ms. Sosbe alleges to have been hostile to her position.

■ In our opinion, to establish the degree of hostility that would excuse a union member from the ordinary duty to exhaust internal remedies, the member must establish futility at every step of the relevant grievance procedure. *Cf. Miller v. General Motors Corporation,* 675 F.2d 146, 150 (7th Cir.1982) (representations of local union officials regarding intent to withdraw any grievances filed deemed too speculative to excuse plaintiff's obligation to exhaust); *Baldini v. Local Union No. 1095,* 581 F.2d 145, 148 (7th Cir.1978) (no exception to exhaustion requirement when plaintiff only told by local official that "nothing more could be done"); *Lewis, supra,* 750 F.2d at 1381 (union procedures deemed futile in light of inferences that the union officials who were alleged to have violated plaintiff's protections were the same through whom plaintiff would have been required to process his claim). Having failed even to allege hostility, let alone futility, with regard to steps 3 and 4, Ms. Sosbe is not excused from her exhaustion

obligation. Thus, even drawing inferences in a light most favorable to her, Ms. Sosbe has failed to raise a genuine issue of fact on this point, and the district court properly entered judgment for the defendants.

■ The appellant also contends that GM cannot "take advantage" of the exhaustion defense. We disagree. Since the Supreme Court issued its decision in *Clayton*, the rule is clear: hybrid claims against unions *and* employers are subject to the exhaustion requirement. Otherwise, a court could find itself presiding over two separate suits based on the same facts. "[T]his is a result that should be avoided if possible." *Clayton, supra*, 451 U.S. at 695, 101 S.Ct. at 2098.

*Time Bar*

■ Even if a genuine issue of material fact could be identified regarding Ms. Sosbe's failure to exhaust, we nevertheless would be compelled to affirm because Ms. Sosbe's claim is time barred.

Ms. Sosbe does not dispute the applicability of a six-month statute of limitations in this case. The six-month statute of limitations is derived from § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). This time bar was adopted for hybrid § 301/fair representation claims by the Supreme Court in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). *Accord Clift v. UAW*, 818 F.2d 623 (7th Cir.1987).

In resolving the statute of limitations question in this case, the only issue is *when* Ms. Sosbe's claim accrued. "The six-month period begins to run 'when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [breach of duty].' " *Steffens v. Brotherhood of Ry.*, 797 F.2d 442, 446 (7th Cir.1986), *quoting from Dozier v. Trans World Airlines*, 760 F.2d 849, 850 (7th Cir.1985).

Judge Steckler concluded that Ms. Sosbe's claim accrued on November 16, 1983, when Mr. Curella informed Ms. Sosbe that the union would not pursue her grievance against GM. Ms. Sosbe asserts that her claim did not accrue until August 30, 1984, when Mr. Accord withdrew the grievance he had filed on her behalf. Therefore, she argues, her complaint, filed on November 15, 1984, satisfies the limitation imposed in *DelCostello*. We agree with Judge Steckler.

It cannot be seriously disputed that when Al Curella informed Ms. Sosbe that "he could not represent her as a union member and as far as he was concerned she had a 1981 seniority date," *see* Affidavit of Imogean Sosbe, Appendix to Brief of Plaintiff-Appellant at 24, Ms. Sosbe knew or reasonably should have known of her union's refusal of representation. Mr. Accord's subsequent withdrawal of the grievance he had filed on her behalf is not controlling as to date of accrual of Ms. Sosbe's claim in light of Mr. Curella's prior unequivocal rebuke. Unless Ms. Sosbe's activities after November 16, 1983, somehow tolled the governing statute of limitations, Ms. Sosbe's claim is deemed to be time barred.

■ Continued correspondence with the union does not, however, toll the six-month time limit. *See Dozier, supra*, 760 F.2d at 852. "Otherwise, a plaintiff could indefinitely delay resolution of Labor disputes merely by bombarding his union with tiresome requests...." *Id.*

The statute of limitations would have been tolled, though, "by the pursuit of internal union remedies even where those remedies are ultimately determined to have been futile." *Frandsen v. Brotherhood of Ry.*, 782 F.2d 674, 681 (7th Cir.1986). As noted, Ms. Sosbe did not employ internal union remedies. She contacted a lawyer, informally persisted in her application by contacting her newly elected bargaining chairman and sent letters to Roger Smith, GM's chairman, and Owen Bieber, president of the UAW, among others. The *Frandsen* rule encourages union members to pursue internal union remedies. Permitting Ms. Sosbe to proceed in this case would have just the opposite effect contrary to *Clayton, supra*, 451 U.S. at 689 (encouraging private rather than judicial resolution of labor disputes). Further-

more, extension of the time alloted would be inconsistent with the concern for rapid resolutions of labor disputes articulated by the Court in *DelCostello, supra,* 462 U.S. at 162, 103 S.Ct. at 2289.

In light of the unequivocal position of the local in November 1983, Ms. Sosbe should have recognized the union's arguable breach of its duty of fair representation at that time. Even if we were of the opinion that Ms. Sosbe was excused from exhausting her internal union grievance process, she would still have been obligated to commence her suit within six months of November 16, 1983. Because she delayed such recourse until nearly one year later, Ms. Sosbe's claim is time barred.

## CONCLUSION

There is no genuine issue of material fact with regard to either Ms. Sosbe's failure to exhaust or the running of the statute of limitations in her case. GM and the union have demonstrated that they are entitled to judgment as a matter of law. Accordingly, for the reasons above, we affirm the district court's judgment.