Constance L. GARNER, and Delores L. Smith on behalf of themselves and others similarly situated, Plaintiffs,

v.

INTERNATIONAL UNION, UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), Region 3, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), Local No. 279, United Automobile, Aerospace and Agricultural Implement Workers of America, Richmond Machining Production Maintenance Unit, Local No. 279, United Automobile, Aerospace and Agricultural Implement Workers of America, Richmond Camshaft Production and Maintenance Unit, and Dana Corporation, Defendants.

No. IP–89–219–C.

United States District Court, S.D. Indiana, Indianapolis Division.

April 24, 1991.

John H. Haskin, John H. Haskin & Associates, Indianapolis, Ind., for Constance L. Garner, Delores L. Smith.

Mark T. Robbins, Segal & Macey, Indianapolis, Ind., for International Auto. Workers.

Nora Macey, Segal & Macey, Indianapolis, Ind., for Region 3 Auto. Workers, Local 279 Auto. Workers.

Evan E. Steger, III, Ice Miller Donadio & Ryan, Indianapolis, Ind., for Dana Corp.

DILLIN, District Judge.

This matter comes before the Court on motions for summary judgment by the Union defendants and by Dana Corporation. For the following reasons, the defendants' motions are granted.

## Background

Constance L. Garner and Delores L. Smith (Plaintiffs) filed their class action complaint on March 9, 1989, pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (Section 301) and the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(1), (2), and § 412 (LMRDA).

The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW or the Union) and Dana Corporation (Dana, or the Company) have been parties to successive collective bargaining agreements regarding Dana's employees at its facilities in Richmond, Indiana. UAW Local No. 279 (the Local) is the bargaining representative for the Ring and Camshaft Local UAW affiliates.[1]

Prior to 1978 Dana's operations were conducted at one facility pursuant to a Master Agreement between UAW and Dana, and the local supplement thereto. In June, 1978, Dana's operations were divided into two separate plants known as the Camshaft plant and the Ring plant, under separate seniority supplements to the Master Agreement.

Letters of intent included in the Camshaft supplement and in the Ring supplement permitted transfer between open jobs based on seniority for working or laid off employees. In 1983, the transfer provisions were modified to apply to employees on layoff only, and not to working employees. In December 1986, the Camshaft and Ring locals ratified their collective bargaining agreement which renewed the transfer provisions as Letter # 4 of the Ring supplement and Letter # 7 of the Camshaft supplement.

Letter # 4, the applicability of which is at the heart of the complaint, provides the following in relevant part:

1. Upon layoff from either Ring Machining Plant or Camshaft Plant, an employee may within 30 calendar days from the effective date of his layoff, make written application to accept preferential hiring in the event of an opening in the other plant. An employee accepting such job opening shall forfeit his seniority right in the plant from which he came. Applications will be selected on the basis of seniority.

2. Upon being employed as provided above, the employee will retain all previous seniority. It is understood that employees on layoff will be recalled to their plant before employees from the other plant are given preferential hiring rights.

In 1987, Dana announced that it intended to close the Camshaft plant. The International Union, the Camshaft Local and Dana engaged in negotiations resulting in a Plant Closing Agreement. The Plant Closing Agreement was ratified by vote of the Camshaft employees on April 25, 1988. The Plant Closing Agreement was not offered for vote to the Ring plant employees.

The named plaintiffs are Ring plant employees. In their complaint they allege that, following the closing of the Camshaft plant, laid off Camshaft employees were permitted to transfer to the Ring plant with full seniority. They allege that due to the Camshaft transfers their seniority rights have been and will be improperly diminished. Both Garner and Smith were laid off and at the time of filing their complaint had not been recalled.

According to the plaintiffs, the transfers were made in violation of the Master Agreement and the Plant Closing Agreement. They base this allegation on the following provisions of the Plant Closing Agreement:

### RETROACTIVE PAYMENT

Grievance CS–8772 will be considered resolved and will be withdrawn from arbitration on the following conditions:

1. The Dana–UAW Richmond Camshaft Local Supplemental Agreement and the Amending Agreement, which became effective December 8, 1986, is revoked and considered null and void.

---

1. The UAW International and Local No. 279 are referred to collectively as the union defendants.

*PERSONNEL SERVICES AND JOB PLACEMENT*

\* \* \* \* \* \*

It is understood that the Richmond Camshaft bargaining unit employees will be covered by the provisions of Article 71 (Transfer Between Plants) for the balance of this agreement and one succeeding Master Agreement.

The Plant Closing Agreement also contained the following introductory language:

The terms and conditions of this agreement will apply to all current Richmond Camshaft bargaining unit employees. The provisions of the current Dana–UAW Master Agreement and its various supplements will continue in full force, except where specifically modified or amended herein.

Plaintiffs claim that the proper interpretation of the retroactive payment provision is that it renders all supplements revoked, including those regarding transfer. Based on the reciprocity of the letters of intent in the two separate supplements, the plaintiffs argue, revoking Letter # 7 and closing the Camshaft plant must render Letter # 4 inoperable as to the Camshaft employees. At that point, plaintiffs argue, transfer would be covered only by Article 71 of the Master Agreement. Dana contends that combining or "dovetailing" the seniority lists of the Camshaft and Ring Plants is appropriate under Letter # 4, which Dana asserts was, and is still, in effect.

Plaintiff Garner wrote a letter on September 21, 1988 to Richard Lein, Assistant Director of UAW's Dana Department, protesting the possible transfer of former Camshaft employees to the Ring facility. Attached to Garner's letter was a petition signed by 147 Ring employees. Lein wrote to Ron Nickell, President of UAW Local 279, stating that Letter of Intent # 4 applied to all layoffs, and not just normal layoffs as Garner had contended. Lein requested that Nickell inform the local union membership of the UAW/Dana Department position on the issue.

On October 10, 1988, two grievances (Grievance No. R88–49 and Grievance No. R88–50) were filed by Ring employees, again challenging Camshaft employees' transfer to open jobs in the Ring plant with full seniority. Attached to Grievance No. R88–50 was a petition signed by 106 Ring employees including plaintiffs Garner and Smith. This grievance reached the third level of local review at which point the company stated its position that Letter # 4 allowed the transfers, which position was accepted by Charles Dugger, the International Representative. The grievances were not further appealed, though the plaintiffs allege that they have exhausted their internal union remedies.

Finally, the plaintiffs also claim that because only the Camshaft plant employees, and not Ring plant employees were permitted to vote on the Plant Closing Agreement, their rights under 29 U.S.C. § 411 were violated.

The Union and Dana have moved for summary judgment contending, *inter alia,* that the plaintiffs failed to bring their action within the period provided by the applicable statute of limitations and that the plaintiffs have failed to exhaust internal union remedies as required by federal labor law. We agree that the plaintiffs were required and failed to exhaust internal remedies as to their claims under both acts. We also find that the plaintiffs were not entitled to vote on the Plant Closing Agreement. Accordingly, summary judgment is appropriate as to the union defendants and as to Dana.

*Discussion*

Summary judgment, pursuant to Rule 56, F.R.Civ.P., is proper only when there is no genuine issue of material fact. *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). The burden of establishing the lack of any genuine issue of material fact is upon the movant, and all doubts are to be resolved against him. *Yorger v. Pittsburgh Corning Corp.,* 733 F.2d 1215, 1218 (7th Cir 1984). If the moving party has met this initial burden and the nonmoving party claims the existence of a question of fact, the Court must then determine whether a genuine issue has

been established as to that fact. *Big O Tire Dealers*, 741 F.2d at 163. Summary judgment must be entered against the nonmoving party where the nonmoving party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986). "In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

A. § 301/duty of fair representation

Statute of limitations

■ The LMRA contains no statute of limitations for § 301 actions. However, the United States Supreme Court has held that the six-month statute of limitations set forth in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applies to "hybrid § 301/duty of fair representation" claims such as those asserted in the present case. *DelCostello v. Teamsters*, 462 U.S. 151, 154–55, 103 S.Ct. 2281, 2285, 76 L.Ed.2d 476 (1983).

> The six-month period begins to run "from the time a final decision on the employee's grievance has been made or from the time the employee discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance." *Richards v. Local 134*, 790 F.2d 633, 636–37 (7th Cir.1986); *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 304 (7th Cir.1983) (union's refusal to file grievance constitutes a final decision that triggers the running of the statute of limitations).

*Adams v. Budd Co.*, 846 F.2d 428 (7th Cir.1988), *cert. denied*, 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989). In *Clayton v. UAW*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), the United States Supreme Court held that exhaustion of internal union remedies was, with certain

exceptions, a prerequisite to a duty of fair representation suit. Reading *Clayton* together with *DelCostello*, the six-month statute of limitations is tolled during the period that the plaintiff is pursuing internal union remedies, "to commence running only when the union procedures are exhausted." *Frandsen v. Brotherhood of Railway, Airline and Steamship Clerks*, 782 F.2d 674, 681 (7th Cir.1986).

Dana and the Union argue that the statute of limitations has expired since a cause of action based on entry into a collective bargaining agreement generally accrues when the contract is signed. *See, United Independent Flight Officers v. United Airlines*, 756 F.2d 1262, 1273 (7th Cir. 1985); *Clift v. Int'l Union, UAW*, 818 F.2d 623, 628–29 (7th Cir.1987), *rev'd and remanded on other grounds*, 488 U.S. 1025, 109 S.Ct. 830, 102 L.Ed.2d 963 (1989). On this basis they argue that the statute would have begun to run at the earliest in 1978, when the transfer provisions were first introduced into the collective bargaining agreement, or, at the latest, in June, 1986, when the local supplement was last ratified. However, the plaintiffs here do not argue that the "the collective bargaining agreement is not the one to be followed," *Clift* at 628, but that the Union and Dana have wrongfully interpreted the Plant Closing Agreement.

■ On October 4, 1988, Charles Dugger told the plaintiffs that Camshaft employees were going to be transferred into the Ring plant with full seniority. On October 10, 1988, the plaintiffs filed their grievance. On January 18, 1989, Charles Dugger accepted the Company's third level answer to the grievances. Though this resolution was appealable, it is clearly the Union's last word on the grievances as far as they were pursued, and marks the earliest date from which the statute should run.

*Exhaustion of Internal Remedies*

■ The union defendants and Dana assert that the plaintiffs cannot go forward with their § 301 action as they have failed to exhaust internal and contractual reme-

dies as required under federal labor law. The Court agrees.

In *Clayton,* the United States Supreme Court held that before filing a § 301 fair representation suit an employee must first exhaust internal remedies "[w]here internal union appeal procedures can result in either complete relief to an aggrieved employee or reactivation of his grievance...." 451 U.S. at 692, 101 S.Ct. at 2097, 68 L.Ed.2d at 550.

Grievances No. R88–49 and No. R88–50 were referred to the third level of the local grievance procedure as described in the Master Agreement and Local Supplement. At the third level of review, the Company denied the grievances. Sue Carroll of Dana reduced the Company's position to writing on December 13, 1988, concluding that:

> The Camshaft people have been laid off from their former plant and are entitled to exercise their rights under this letter [# 4]. We intend to abide by the provisions of this letter as long as it is a part of our local agreement.

Charles Dugger was the UAW International Representative. By his letter of January 18, 1989, he accepted the Company's third level answer to his grievances. The Union has attached to its motion for summary judgment a copy of Dugger's letter reflecting that a copy was forwarded to Ron Nickell, local union president.

The plaintiffs claim in paragraph 23 of their complaint that they have exhausted their internal remedies. From information in the documents submitted by the defendants, we see that this is not so.

The UAW Constitution requires that an individual "aggrieved by any action, decision or penalty imposed" by the union exhaust all union appeals procedures "before going to a civil court or governmental agency for redress." UAW Constitution, Art. 33, § 5 (1986). Under the union appeals procedures, the employee would first seek relief from the local membership. If not satisfied with the result at this level, the employee may appeal the decision to the UAW's International Executive Board (IEB). After an appeal to the International Executive Board, an employee may obtain review by the Convention Appeals Committee, a peer review group, or by the independent Public Review Board. UAW Constitution, Art. 32, Art. 33, § 2.

According to the affidavit of Carolyn Forrest, administrative assistant to the International Union's president, UAW records show no appeal from Garner or Smith of Grievance No. R88–50.[2] The affidavit of David Klein, counsel to the Public Review Board, shows that the grievance was not appealed to that body either.

These internal union appeals procedures as outlined in the UAW constitution have been recognized by the Seventh Circuit as fair. *See Baldini v. Local Union No. 1095,* 581 F.2d 145, 149 (7th Cir.1978) (collecting cases) (overruled on other grounds).

The plaintiffs in their response to defendants' motions for summary judgment argue that they should be excused from the exhaustion requirement, since in this case further pursuit of internal remedies would be futile. We disagree.

■ A court may, in its discretion, excuse an employee's failure to exhaust. *Sosbe v. Delco Electronics Div. of G.M.C.,* 830 F.2d 83, 86 (7th Cir.1987). The factors which should guide the court in its discretion were first outlined by the Supreme Court:

> [F]irst, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether the exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

---

**2.** Forrest's affidavit reflects that Garner and others did appeal to the IEB from other grievances concerning a dispute about scheduling overtime. No appeal of these grievances was taken to either the Public Review Board or the Convention Appeals Committee.

*Id., citing Clayton,* 451 U.S. at 689, 101 S.Ct. at 2095, 68 L.Ed.2d at 548. The court is not necessarily limited to those three factors, but should look to the reasonableness of imposing exhaustion under the circumstances. *Sosbe,* at 86, *citing Lewis v. Local Union No. 100,* 750 F.2d 1368, 1380 (7th Cir.1984).

■ The Union and Dana had entered into a letter agreement on December 4, 1983, originally negotiated in 1979 and renewed on November 20, 1986, which expressly provided for reactivation of grievances determined by the IEB, the Public Review Board or the Convention Appeals Committee to have been improperly concluded by the union. Such grievances are to be reinstituted in the parties' grievance procedure at the same level at which it was originally settled.

The plaintiffs do not contest availability of reactivation procedures, nor do they argue that internal union procedures would have unreasonably delayed their opportunity to obtain a judicial hearing. The plaintiffs do argue that the UAW appeals procedure cannot give them the relief they seek, thereby making an appeal futile. They rely for support of this assertion on a footnote in *Schultz v. Owens–Illinois, Inc.,* 696 F.2d 505 (7th Cir.1982), a § 301/fair representation case. In *Schultz,* the court ruled that certain employees who had not filed grievances under mandatory contract grievance procedures were not precluded from maintaining suit along with another employee who had filed a grievance. The court found that since the contract claims of each of the employees were identical, "it would have been futile for the plaintiffs *other* than Schultz to have filed grievances." *Id.* at 511 (emphasis added). The court also found that the plaintiffs would be excused from exhausting intra-union remedies under *Clayton,* since it was "extremely doubtful whether the Union could, because of the three-day time limit for filing provided in the contract, reinstate or reactivate the grievances." *Schultz,* 696 F.2d at 505. Neither circumstance applies to this case.

The Court also observed in a footnote that the plaintiffs might not be required to exhaust grievance procedures if their grievance sought modification of the collective bargaining agreement, since modification is not available through the grievance procedure. *Id.* at 512 n. 8 (*citing Williams v. Pacific Maritime Ass'n,* 617 F.2d 1321, 1328 (9th Cir.1980); *Beriault v. Local 40, Super Cargoes and Checkers, ILWU,* 501 F.2d 258, 266 (9th Cir.1974). We do not find that this footnote supports plaintiffs desired reading of *Schultz,* i.e., that it is *always* futile for employees to appeal contract interpretation disputes with their union.

*Williams* relies on, and the *Schultz* footnote mentions *Beriault.* The court in *Beriault* however, did not produce the holding that the instant plaintiffs desire. In *Beriault,* the plaintiffs claimed that the union and the company breached a part of the collective bargaining agreement covering transfers into certain jobs by "dispatching such longshoremen to do checking work even where there was longshore work available." *Beriault,* 501 F.2d at 262. The court held that as to such "purely contract claims," exhaustion of contractual grievance and arbitration procedures was necessary.

The plaintiffs in *Beriault* also claimed that the union breached its duty of fair representation by negotiating and enforcing the agreement. The Court held that the claim against the union for *enforcing* the terms would also fall for failure to exhaust contractual remedies. Then, the Court went on to hold that as to claims for *negotiating* the agreement, exhaustion would not apply since the plaintiffs sought "modification of the contract, a remedy not available through the grievance procedure." *Id.* at 266.

Here, the plaintiffs are arguing that by *interpreting* the plant closing agreement as it does, the Union is acting in bad faith and in breach of its duty of fair representation. We believe that even under the Ninth Circuit's decisions excusing plaintiffs from exhaustion of contractual remedies where the plaintiffs seek modification, the instant

plaintiffs should not be excused. These plaintiffs could have further pursued their position on interpretation in the intra-union appeals process. And, as Dana contends, if the UAW's independent Public Review Board determined that the Ring plant employees were correct in their objection to the local Union's interpretation of the Ring local supplement and the Plant Closing Agreement, the local Union would be required to reverse its position with respect to the seniority issue, reinstate the grievances of the employees, and, if necessary, pursue the grievances through binding arbitration.

■ The plaintiffs also argue that further pursuit of their grievance in the union appeals procedure was futile because they were denied access to the union constitution. A union member has a duty to know his union appeal rights. *Newgent v. Modine Mfg. Co.*, 495 F.2d 919, 927–28 (7th Cir.1974) (overruled on other grounds).

In *Miller v. General Motors Corp.*, 675 F.2d 146 (7th Cir.1982) the court, in holding the plaintiff to the exhaustion requirement, noted that Miller "had access to Solidarity, the union newsletter, which in a number of issues outlined the internal appeals procedures." *Id.*, 675 F.2d at 150. The court further observed that "Miller had not argued that he was not provided with a copy of the union's Constitution or that the union publication did not adequately explain his appeal rights." *Id.* Plaintiffs here argue that since they have made such allegations, they are excused from the exhaustion requirement. We do not accept this view of the law.

The *Newgent* court observed in a footnote:

Newgent does not contend that the Union refused to provide him a copy of the Constitution. Indeed, as the Union points out, the UAW Constitution is a document of public record, freely available from the U.S. Secretary of Labor upon request. 495 F.2d 919, 928 at n. 18.

It may be on this language in *Newgent* that the *Miller* dicta—that Miller had not claimed to have been denied a copy of the Constitution—is based. However, in a case decided after *Miller*, the Seventh Circuit court states that "the failure to provide [the plaintiff] with such materials does not excuse [the plaintiff] from exhausting his intra-union remedies." *Lewis v. Laborers International Union of North America Local 100*, 750 F.2d 1368, 1381 (7th Cir. 1984) (*citing Newgent v. Modine Mfg. Co.*, 495 F.2d at 927–28). *See also, Cicirelli v. Lear Siegler, Inc.*, 510 F.Supp. 1012, 1015 (E.D.Mich.1981) (rejecting plaintiff's argument that he should not be required to exhaust his intra-union remedies because he was unaware of the existence of such remedies because no copy of the UAW Constitution was furnished to him, because the Constitution and By–Laws were unclear about the availability of an internal remedy and that the doctrine was inapplicable when the employer and union were joined as defendants). We believe that the fact that these plaintiffs were not provided copies of the Union constitution does not excuse them from the exhaustion requirement.

■ The plaintiffs also contend that they should be excused from the exhaustion requirement because Charles Dugger allegedly represented to them that the grievance would go no further and that pursuit of the matter would result in "big trouble to someone." This contention is insufficient to relieve them of their obligation to exhaust intra-union remedies.

The meeting took place on October 4, 1988; thus, the comment was allegedly made before the filing of the grievance on October 10, 1988, but after Garner's letter of September 21. We do not believe that this comment, while hostile, demonstrates the plaintiffs' inability to expect a fair hearing on their claim at the levels of appeal remaining open to them. While they could have been understandably deterred from pursuing a grievance to a level at which Dugger would be involved in the resolution process, they went forward that far. There is no evidence that the grievance, once filed, was handled arbitrarily or in bad faith. Nor is there evidence that there would have been improper handling

of the grievance by the appellate bodies. The Seventh Circuit held in *Sosbe* that:

[T]o establish the degree of hostility that would excuse a union member from the ordinary duty to exhaust internal remedies, the member must establish futility at every step of the relevant grievance procedure. 830 F.2d at 86.

We believe that the plaintiffs have not shown an acceptable basis for not pursuing the grievance to higher levels of appeal.

The Court finds that the plaintiffs failed to exhaust their intra-union remedies as required under *Clayton*. Accordingly, their § 301/fair representation claim against the UAW and Dana must fail.

*LMRDA Claims*

The plaintiffs assert certain claims under Title I of the Labor–Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411. Section 411(a)(1) provides the following:

(1) **Equal rights.** Every member of a labor organization shall have the rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

In paragraph 17 of the complaint, plaintiffs claim that "Ring local members were not advised at any time of the specific content of the proposed [Plant Closing] agreement, were denied the right to speak and/or vote with respect to the provisions of the agreement and it was represented they would not be affected by the agreement since they were not considered a party to said agreement." Thus, plaintiffs apparently believe that the Union wrongfully denied them the right to consider and vote on the Plant Closing Agreement.

First, the plaintiffs argument as to voting appears to be inconsistent with their § 301 argument. In support of their § 301 claims, they do not argue impropriety in the negotiation of the Plant Closing Agreement, but argue that allowing Camshaft employees to transfer into the Ring plant with full seniority *violated* the Master Agreement and the Plant Closing Agreement. Thus, they seek to enforce the agreements, at least as they interpret them. Their claim does not suggest that they would have objected to the Plant Closing Agreement as written, but suggests rather that they disagree with the manner in which the Union and Dana have interpreted it. Moreover, the specific transfer rights that the plaintiffs are challenging were not created by the Plant Closing Agreement, but by the Ring local supplement which was ratified by the Ring employees in 1983 and 1986. Their claim thus seems more logically to fall under § 301 only, and not § 411.

■ Next, even if the plaintiffs can state a claim under § 411, they have not established entitlement to vote on the Plant Closing Agreement.

The Seventh Circuit has held that "[w]hen a union provides its membership with the right to vote on a certain matter, the right must be extended on an equal basis and in a meaningful manner." *McGinnis v. Teamsters Local 710*, 774 F.2d 196, 199 (7th Cir.1985), *cert. denied*, 475 U.S. 1121, 106 S.Ct. 1638, 90 L.Ed.2d 184 (1986).

The UAW Constitution provides that after negotiations for a contract or supplement thereof have been concluded with a employer, "the vote of the Local Union membership, or Unit membership in the case of an Amalgamated Local Union, or at a meeting called especially for such purpose...." UAW Constitution, Art. 19 § 3.

The Seventh Circuit has also stated that "a union's interpretation of its own constitution, by-laws, and other promulgations is entitled to judicial deference; we must be able to call the interpretation unreasonable, perhaps even 'patently unreasonable,' before we can set it aside." *Pilots Protection Committee v. Sanderson*, 909 F.2d 213, 218 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 958, 112 L.Ed.2d 1045 (1991), *citing Local Union No. 657 v. Sidell*, 552 F.2d 1250, 1257 (7th Cir.1977),

*cert. denied,* 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977) (other citations omitted).

The Union argues that it was a reasonable interpretation of its constitution to allow only the Camshaft employees to vote on the Plant Closing Agreement. This decision was taken, it contends, in accordance with a longstanding tradition of interpreting the constitution to allow only those employees affected by a particular measure to vote on that measure. The Union takes the position that since the terms of the Plant Closing Agreement did not have a direct bearing on the terms and conditions of employment of the Ring plant employees, it was not necessary, and indeed would have been unreasonable, to extend to Ring unit members the opportunity to vote. Plaintiffs argue that the Plant Closing Agreement indeed "affected" them, since Camshaft employees "will be preferentially hired into the Ring plant ... This directly harms the interest that Ring employees with lower amounts of seniority have in maintaining job security."

It is obvious that the Ring plant employees would be affected by the closing of the Camshaft plant and the transfer of Camshaft employees, and it is disingenuous for the Union to suggest otherwise. However, the Union correctly explains that the provision which would affect the Ring employees' seniority rights was contained in local supplements which had been twice ratified by each plant's union membership and not in the Plant Closing Agreement.

█ A collective bargaining agreement must be construed as a whole and in relation to the legal context that existed at the time it was negotiated. *Bituminous Coal Operators Ass'n, Inc. v. Connors,* 867 F.2d 625, 630 (D.C.Cir.1989), *citing Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 279, 76 S.Ct. 349, 100 L.Ed. 309 (1956).

Here, the Plant Closing Agreement specifically provided in its introductory paragraphs for the continuation of the Master Agreement and Camshaft Local Supplement "except where specifically modified or amended [t]herein." The language which the plaintiffs rely on as revoking the Camshaft transfer provision appears under the "Retroactive Payment" heading. Reading the Plant Closing Agreement as a whole, we believe that that language is directed towards the topic of retroactive payment and revokes the local supplement and amending agreement in that area only. Therefore, we agree with the Union that the terms and conditions of Plant Closing Agreement had direct application only to the Camshaft employees, and that it was reasonable to allow only the Camshaft employees to vote.

█ Finally, the plaintiffs have failed to exhaust their internal union remedies. Under 29 U.S.C. § 411(a)(4), a union member "may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organization or any officer thereof...." A court thus has authority to require a plaintiff to exhaust internal union remedies before bringing a claim in federal court. *Bee v. Auto Workers Local 719,* 744 F.Supp. 835, 837, 136 LRRM 2130, 2132, (N.D.Ill.1990). This authority is permissive rather than mandatory. *Id.* In exercising its discretion, the factors to be considered are parallel to those for exhaustion of remedies prior to filing suit under the LMRA:

> whether the internal remedies are reasonable and fair, whether exhaustion would be futile and whether requiring the plaintiff to pursue internal remedies would create an unreasonable delay.

*Id.,* citing *Johnson v. General Motors,* 641 F.2d 1075, 1079 (2nd Cir.1981); *Semancik v. United Mine Workers of America,* 466 F.2d 144, 150 (3d Cir.1972); *Maier v. Patterson,* 511 F.Supp. 436, 440 (E.D.Pa.1981). In *Bee,* the court found that the plaintiffs had not shown sufficient cause to excuse them from the exhaustion requirement, despite the fact that they claimed that union officials were biased against them:

> [Plaintiffs] would receive a fair consideration of ther claims even if officials of the Union were biased against them. While the first step of the International Union's appellate process requires the grievant to appeal to local union officials,

the grievant may also appeal to the Executive Board of the International Union and an independent Public Review Board. We can perceive no unfairness in this procedure.

744 F.Supp. at 838.

This Court has frequently required exhaustion of internal union remedies in the LMRDA context. *See e.g. Lemons v. Prestolite Barrery Div.*, 120 LRRM 3158, 3160, 1985 WL 5741 (S.D.Ind.1985); *Hayes v. IBEW Local 481*, 83 LRRM 2647, 2650, 1973 WL 957 (S.D.Ind.1973); *Foley v. Chrysler Corp.*, 78 LRRM 2744, 1971 WL 825 (S.D.Ind.1971).

As noted with regard to the § 301 claims, the plaintiffs have failed to demonstrate that they should be excused from exhausting internal union remedies. Accordingly, summary judgment must be entered against them on their § 411 claim.

## Conclusion

For the foregoing reasons, the motions for summary judgment by Dana and by the union defendants are granted.