Theresa GOINS, Plaintiff,

v.

**BAKERY, CONFECTIONERY &
TOBACCO WORKERS LOCAL
UNION 203–T, Defendant.**

Civil Action No. 3:96CV446.

United States District Court,
E.D. Virginia,
Richmond Division.

Oct. 17, 1996.

Robert Patrick Geary, Richmond, VA, for plaintiff Theresa Goins.

Jay Joseph Levit, Levit & Mann, Richmond, VA, for defendant Bakery, Confectionery & Tobacco Workers Local Union 203–T.

## MEMORANDUM OPINION

SPENCER, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment. For the reasons set forth below, the Court grants the motion.

### I. BACKGROUND

Plaintiff Theresa Goins has been an employee of Philip Morris ("Company") in its Manufacturing Center in Richmond, Virginia, since 1979. Defendant is the local chapter of the National Union of Bakery, Confectionery, and Tobacco Workers. The Company maintains a substance abuse policy whereby any employee who is found to have violated the policy against alcohol and substance abuse twice within a three year period can be terminated. After the first positive test for substance abuse, the employee is offered an opportunity to enter the Company's Employee Assistance Program for substance abuse treatment. If the employee accepts the Company treatment plan, a second violation will result in a 30 day suspension. However, an employee who rejects the Company treatment plan and tests positive a second time, is subject to termination. Finally, the policy specifies that any employee who refuses a test is deemed to have tested positive.

Plaintiff admits in her deposition to knowledge of these policy provisions.

On February 8, 1995, the Company asked Plaintiff to perform a fitness for duty test by breathing into a breathalyzer machine. Plaintiff could not complete the test because she claimed to have a respiratory condition which prevented her from blowing into the breathalyzer. The Company deemed Plaintiff to have failed the test and suspended her for the rest of her shift. The Company then offered Plaintiff an opportunity to enter its Employee rehabilitation plan. Plaintiff refused to enter the Company's plan because she was already engaged in a plan of her own through an independent rehabilitation company.

On March 7, 1995, the Company again asked Plaintiff to complete a breathalyzer test. Plaintiff passed this test with no respiratory difficulties. On March 13, the Defendant Union filed a grievance with the Company on Plaintiff's behalf asking that Plaintiff be exempt from random breath tests due to her respiratory problems. About this time, Defendant's representatives informed Plaintiff that she would have to submit medical evidence of her inability to perform the breath test in order to successfully win her grievance.

On August 22, 1995, during the pendency of the grievance proceedings, Plaintiff was asked to perform another breath test. Once again, Plaintiff failed to complete the test because of her claimed respiratory condition. Plaintiff was deemed to have failed this test and suspended for the remainder of the day. The following day, August 23, Plaintiff was suspended indefinitely with intent to discharge.

On September 22, 1995, Plaintiff attended a meeting with Company representatives, Defendant Union representative Gerald Hicks, and Company physician Dr. Compton. At this meeting, Dr. Compton opined that Plaintiff was perfectly capable of performing the tests. Plaintiff did not present any medical evidence to the contrary. The Company informed Plaintiff that she was discharged for her lack of cooperation and deemed failure of the two breathalyzer tests in February and August of 1995. On September 28, 1995,

the Company rejected Defendant's grievance request to exempt Plaintiff from further breathalyzer tests.

On October 10, in a phone conversation, Hicks again reminded Plaintiff that she would need medical evidence in order to be exempted from further breath tests. Hicks told Plaintiff to have this evidence for the upcoming October 17 meeting or the Defendant Union would not be able to take further action.

On October 17, 1995, Plaintiff attended another meeting with the Company, Hicks, Compton, and Defendant Union President, Jerry Sprouse. This meeting represented the fifth and final step in the grievance process. At the meeting, Plaintiff failed to present any medical evidence that her condition prevented her from completing the breath tests. Dr. Compton reaffirmed his opinion that Plaintiff was capable of taking the tests and the Company reaffirmed its discharge of Plaintiff. Hicks, in his affidavit, claims that at the conclusion of this meeting, both he and Sprouse informed Plaintiff that because of her lack of medical evidence there was nothing further the Defendant could do concerning her discharge and related grievances.

Hicks further claims that during a phone conversation sometime after the October 17 meeting, but before Thanksgiving, he again informed Plaintiff that there was nothing further the Defendant could do. Plaintiff then asked Hicks the proper procedure for obtaining her profit sharing money from the Company and he relayed the pertinent information to her.

Over the next few months, Plaintiff mailed a series of letters to Defendant inquiring as to the status of her grievances and the date of the next hearing. Defendant did not respond to Plaintiff's inquiries. Plaintiff filed this suit claiming that Defendant failed to fairly represent her in her grievance against the Company. Defendant has moved for summary judgment.

## II. ANALYSIS

### A. Standard of Review

A motion for summary judgment may be granted only where "there is no genuine

132

issue as to any material fact" and where the non-moving party is entitled to judgment as a matter of law. *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985); Fed.R.Civ.P. 56(c). The Court must view the known facts of the case, and the inferences which can be drawn from those facts, in a manner most favorable to the party opposing the motion. *Ballinger v. North Carolina Agr. Extension Serv.,* 815 F.2d 1001, 1004 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). While viewing the facts in such a manner, the Court looks to any affidavits or other specific facts to determine whether a triable issue exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

> In determining whether summary judgment may be granted, the district court must perform a dual inquiry into the genuineness and materiality of any purported factual issues. Whether an issue is genuine calls for an examination of the entire record then before the court in the form of pleadings, depositions, answers to interrogatories, admissions on file and affidavits, under Rule 56(c) and (e) ... Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes.

*Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985).

### B. Statute of Limitations

■ Defendant contends that Plaintiff's claim of unfair representation is barred by the statute of limitations. The parties agree that the applicable limitation period is the six month limitation found in 29 U.S.C. § 160(b). *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The parties further agree that the cause of action accrues and the limitation period begins to run when the Plaintiff knew or should have known that Defendant was going to take no further action on her behalf. The parties disagree, however, as to just when Plaintiff became aware of Defendant's position.

According to Defendant, Plaintiff had knowledge of Defendant's position in October and November of 1995. Defendant points to Plaintiff's deposition in which she states that she knew Defendant would not take any further action when the Union would not return her phone calls in the end of October. Further, Defendant argues that this testimony is corroborated by Union Committeeman Gerald Hicks' affidavit which states that Hicks as well as Union President Jerry Sprouse informed Plaintiff at the October 17 meeting that there was nothing further Defendant could do concerning Plaintiff's discharge and related grievances.

Plaintiff argues that Defendant's position did not become clear to her until the Union failed to respond to Plaintiff's letters in December 1995 and February 1996. According to Plaintiff, "[i]t was at that point it became very obvious that the union was not going to take any action" in her favor.

Several factors point to the fact that Plaintiff should have known of Defendant's position in October of 1995. First, Plaintiff was repeatedly notified in October and November that the Defendant had exhausted its procedures with respect to her grievance. Hicks testified that both he and Sprouse informed Plaintiff of Defendant's position. Secondly, Plaintiff attended the final meeting of the grievance proceeding on October 17. Finally, in the telephone conversation with Hicks between the October 17 meeting and Thanksgiving, Plaintiff seemed resigned to the fact that her grievance would proceed no further and asked for her profit sharing money. Because the evidence so overwhelmingly points to the fact that Plaintiff not only should have known, but most likely did know of Defendant's position in October, the statute began to run at that time.

■ The fact that Plaintiff sent several letters to Defendant from December 1995 to February 1996, does not serve to toll the statute of limitations. As Defendant points out "continued correspondence with the union does not ... toll the six-month time limit. Otherwise, a plaintiff could indefinitely delay resolution of labor disputes by merely bombarding his union with tiresome requests." *Sosbe v. Delco Electronics Division of Gener-*

*al Motors Corp.,* 830 F.2d 83, 87 (7th Cir. 1987). Plaintiff here has attempted exactly what *Sosbe* prohibits; that is, she bombarded Defendant with tiresome requests. An examination of the four letters reveals that they are all nearly carbon copies of each other and appear to be an attempt to delay the statute. Had Plaintiff truly not known the status of her grievance, common sense would dictate that Plaintiff would have made a more concerted effort to determine Defendant's position. After the final grievance meeting of October 17, Plaintiff made no further attempt to obtain the necessary medical evidence of her claimed respiratory condition. Plaintiff's actions in failing to prove her condition and seeking her profit sharing money seem to clearly demonstrate her knowledge of Defendant's position in October. The meager inquiries represented by the four letters are not evidence of Plaintiff's ignorance of Defendant's position and do not serve to toll the statute in this case.

Plaintiff has submitted insufficient evidence to create a genuine issue of material dispute with respect to whether she should have known of Defendant's position. Defendant made its position clear in October and made no affirmative representations after that time which would lead Plaintiff to believe otherwise. Defendant did not string Plaintiff along with promises of future grievance actions. Therefore, the Court declares as a matter of law that Plaintiff should have known her grievance remedies had ended in October and the statute of limitations began to run at that time. Because she did not file suit until June, Plaintiff's claim is therefore time-barred.

### C. Breach of Duty of Fair Representation

 Even if Plaintiff has created a genuine issue of material fact with respect to the statute of limitations, she cannot survive summary judgment regarding Defendant's alleged breach of fair representation. Plaintiff claims that Defendant failed to adequately represent her in her grievances against the Company. She believes that a factual dispute exists with respect to this issue simply because the parties disagree as to the adequacy of Defendant's representation. This difference of opinion does not create an issue of material fact. Plaintiff must present sufficient evidence from which a reasonable jury could conclude that Defendant breached its duty of representation. Plaintiff fails to do so.

The evidence tends to show that Defendant acted reasonably in its pursuit of Plaintiff's grievance. Defendant filed Plaintiff's requested grievance with the Company by written notice dated March 13, 1995. The parties participated in a five step procedure. Plaintiff herself attended several meetings with Union and Company officials. Plaintiff admitted that Defendant's representatives Danny Isley and Jerry Sprouse argued on her behalf at these meetings. The Company then rejected the grievances in letters dated September 28 and October 18. Defendant informed Plaintiff several times that it could do nothing more in regards to her grievances.

As Defendant states, "a union breaches its duty only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Association International v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991). Defendant has acted reasonably in its representation of Plaintiff. Defendant filed and presented a grievance to the Company on Plaintiff's behalf but was unsuccessful due to a lack of medical evidence of Plaintiff's respiratory condition. Plaintiff had ample time to obtain such evidence and failed to do so. There is absolutely no evidence from which a reasonable jury could conclude that Defendant breached its duty of representation. Summary judgment is thus proper in this case.

### D. Conclusion

Plaintiff's claim is barred by the applicable statute of limitations. Even if the statute of limitations has not run out, Plaintiff has failed to present sufficient evidence of Defendant's breach of duty of fair representation to create a triable issue of fact. For the above reasons, the Court grants Defendant's motion for summary judgment.

An appropriate Order shall issue.